# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LARRY D. MYERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-07-009-JHP-SPS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant Larry D. Myers requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining that he was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and REMANDED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and

work experience, engage in any other kind of substantial gainful work in the national economy . . ." *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) to two inquiries: first, whether the decision is supported by substantial evidence; and second, whether the correct legal standards were applied. *Hawkins v. Chater*, 114 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into

---

[1] Step one requires the claimant to establish he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to a listed impairment), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show he does not retain the residual functional capacity (RFC) to perform his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work he can perform existing in significant numbers in the national economy, taking into account the claimant's age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

account whether the record detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias* 933 F.2d at 800-801.

## Claimant's Background

The claimant was born on August 5, 1950, and was 55 years old at the time of the administrative hearing. He has a high school education and previously worked as a landscape specialist. The claimant alleges he has been disabled since April 2, 2004, because of post traumatic stress disorder ("PTSD"), depression, diabetes, and problems hearing.

## Procedural History

On July 9, 2004, the claimant protectively filed an application for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The application was denied. After a hearing on September 20, 2005, ALJ Michael Kirkpatrick found the claimant was not disabled in a decision dated May 15, 2006. The Appeals Council denied review, so the ALJ's decision represents the final decision of the Commissioner for purposes of this appeal. 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform medium work, *i. e.*, lift and/or carry 25 pounds frequently and 50 pounds occasionally, stand and/or walk six hours in an eight-hour workday, and sit six hours in an eight-hour workday (Tr. 25). The claimant was further limited to only simple, routine, unskilled tasks that did not require interacting

with the general public. The ALJ determined that the claimant was not disabled because he could perform his past relevant work as a landscape specialist (Tr. 29).

**Review**

The claimant contends that the ALJ failed to include all of his mental limitations in the RFC assessment. He argues that the ALJ improperly evaluated the opinions from his treating psychologist Dr. Roy T. Maxwell. The undersigned Magistrate Judge finds this argument persuasive.

The record reveals that the claimant began psychotherapy with Dr. Maxwell as early as May 2002. The claimant complained of difficulty in social, interpersonal, and the employment areas of functioning. Dr. Maxwell assessed the claimant with PTSD (chronic, delayed onset, severe), panic disorder with agoraphobia, depression due to Type I diabetes, and insomnia due to PTSD. He noted the claimant's Global Assessment of Functioning ("GAF") score was 50 and indicated this referred to significant impairment in the ability to work, in family relations, and in judgment, thinking, and mood (Tr. 298-302). The claimant continued to see Dr. Maxwell on nearly a monthly basis with virtually the same diagnosis through January 2003 (Tr. 263-97). In February 2003, Dr. Maxwell recommended that the claimant see Dr. C.F. Mynatt for a second opinion on the severity of his PTSD (Tr. 261). By April 2003, the claimant had reportedly seen Dr. Mynatt and had been assigned a Limitation of Functioning ("LOF") score of 48 (Tr. 249). The claimant's condition worsened in August 2003. He had problems with depression, sleeping, and impulse control. He struggled with

his job and had recently received a reprimand. Dr. Maxwell's assessment remained the same except that the claimant now suffered from obsessive compulsive disorder and his GAF score had lowered to 45 (Tr. 234-38). By April 2004, the claimant had been recognized by the VA as 70% disabled for PTSD with a total disability rating of 90%. He stopped working on April 2, 2004, and Dr. Maxwell viewed him as unemployable. He was noted to have deficiencies in most areas including work, learning, family relations, judgment, and thinking and mood, and he continued to have a GAF score of 45. His prognosis was judged as poor and was not likely to improve to the point of becoming employable (Tr. 191-96).

The claimant was evaluated by Dr. Bayne in October 2004. He primarily complained of PTSD associated with his experience in the Vietnam war. Upon examination, Dr. Bayne noted the claimant was in "obvious distress." He appeared cooperative with logical and goal-directed flow of thought and denied any hallucinations. Dr. Bayne noted the claimant had symptoms "affecting sleep, appetite, memory, concentration and energy that [were] suggestive of depression." He indicated the claimant's I.Q. was greater than 80 but that he was "not employable." He assessed the claimant with PTSD (chronic and delayed) and a LOF score of 50. Dr. Bayne noted that even with proper treatment, the claimant's condition would not likely improve in the next 12 months (Tr. 138-40).

The claimant continued to see Dr. Maxwell on a nearly monthly basis through August 2005 (Tr. 150-60, 369-413). In September 2005, Dr. Maxwell completed a Mental Impairment Questionnaire. He indicated that the claimant exhibited signs and symptoms

such as sleep disturbance, mood disturbance, emotional liability, delusions or hallucinations, recurrent panic attacks, paranoia or inappropriate suspiciousness, difficulty thinking or concentrating, suicidal ideation or attempts, social withdrawal or isolation, blunt, flat or inappropriate affect, illogical thinking or loosening of associations, decreased energy, obsessions or compulsions, intrusive recollections of a traumatic experience, generalized persistent anxiety, and hostility and irritability. He noted the claimant took Zoloft and Desyryl and that he was not likely to improve to the point of employability. He found the claimant would have difficulty working on a sustained basis because he could not handle the stress, get along with others, or concentrate and remember. He assessed the claimant with extreme degrees of limitation in activities of daily living, difficulties maintaining social functioning, deficiencies of concentration, persistence, or pace, and continual episodes of deterioration or decompensation in a work setting (Tr. 478-80).

As of February 2006, Dr. Maxwell found that the claimant's symptoms included: "suicidal ideation; obsessional rituals which interfere[d] with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); and an inability to establish and maintain effective relationships." His assessment remained the same, including a GAF score of 45 (Tr. 494-98).

A medical opinion from a treating physician is entitled to controlling weight if "'the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record. [I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300. Even if the opinion is not entitled to controlling weight, the ALJ is required to determine the proper weight to give it by analyzing *all* of the factors set forth in 20 C.F.R. § 404.1527. *Id*. ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300. Those pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and, (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001).

The ALJ determined that the opinions of Dr. Maxwell were not entitled to controlling weight but were instead entitled to "little weight" because: (i) Dr. Maxwell's opinion that the claimant was unemployable addressed an issue reserved solely to the Commissioner; (ii) the claimant worked during a time that Dr. Maxwell deemed him unemployable; (iii) the claimant's "treatment consisted of only monthly counseling sessions of 45 minutes to one hour . . . where the primary topic seemed to be increasing claimant's VA compensation rating[;]" (iv) the claimant was never referred for more aggressive treatment; (v) Dr. Maxwell's opinions appeared to be based on the claimant's subjective complaints; and, (vi) Dr. Maxwell's opinions were inconsistent with the other evidence in the record. The ALJ's treatment of Dr. Maxwell's opinions was deficient for several reasons.

First, the ALJ correctly observed that whether the claimant is able to work is an issue reserved solely to the Commissioner. *See* 20 C.F.R. § 404.1527(e)(1), (2) (noting that opinions that claimant is disabled, unable to work, or that an impairment meets or equals the requirements of any impairment in the Listing of Impairments "are not medical opinions, as described in paragraph (a)(2) of this section, but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."). But Dr. Maxwell provided other opinions which were all medical opinions to be considered under the treating physician rule. *See* 20 C.F.R. § 404.1527(a)(2) ("Medical opinions are statements from physicians . . . that reflect judgments about the nature and severity of [a claimant's] impairment(s),

including . . . symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and . . . physical or mental restrictions.").

Second, the ALJ appears to have discussed only those portions of Dr. Maxwell's treatment notes that supported his assessment of the evidence. *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("[The] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper."). For example, although the claimant worked during part of the time when Dr. Maxwell assigned the claimant GAF scores from 45 to 50, the ALJ did not mention the numerous notations made by Dr. Maxwell that the claimant was having difficulty in social, interpersonal, and the employment areas of functioning. In August 2003, Dr. Maxwell noted that the claimant's condition had worsened, *i. e.*, he had problems with depression, sleeping, and impulse control, and he struggled with his job and had recently received a reprimand (Tr. 234-38). Dr. Maxwell discussed the claimant's VA compensation rating in his monthly reports, but he also recounted in detail his discussions with the claimant about his PTSD and other symptoms. Further, although the claimant received no in-patient care for his condition, he took prescription medication regularly and Dr. Maxwell referred him to Dr. Mynatt with regard to his PTSD (Tr. 221-26).

Third, there is no indication that Dr. Maxwell's opinions expressed in his numerous treatment records or on the questionnaire were based solely on the claimant's subjective complaints. *Langley*, 373 F.3d at 1121 ("The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was based only on claimant's subjective complaints and was 'an act of courtesy to a patient.' The ALJ had no legal nor evidentiary basis for either of these findings. Nothing in Dr. Hjortsvang's reports indicates he relied only on claimant's subjective complaints or that his report was merely an act of courtesy.") [citation omitted]. In any event, "[t]he practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements." *Thomas v. Barnhart*, 147 Fed. Appx. 755, 759 (10th Cir. 2005) [unpublished opinion]. *See also Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) ("[A] psychological opinion may rest either on observed signs and symptoms or on psychological tests[.]").

Fourth, although the ALJ found that Dr. Maxwell's opinions were inconsistent with the other evidence in the record, he failed to specifically identify any of the inconsistencies. *See Langley*, 373 F.3d at 1123 ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."), *quoting Watkins*, 350 F.3d at 1300. Further, the record reveals that Dr. Maxwell's opinions were consistent with at least *some* of the evidence. For example, Dr. Maxwell opined that the claimant had a GAF score of 45-

50, while Dr. Bayne indicated that the claimant's LOF score was 50 (LOF score is comparable to GAF score), and Dr. Mynatt found that the claimant had a LOF of 48 (Tr. 249). In addition, Dr. Maxwell noted significant limitations in the claimant's functioning, *e. g.*, obsessional rituals interfering with routine activities; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); difficulty in adapting to stressful circumstances (including work or a work-like setting); and an inability to establish and maintain effective relationships (Tr. 478-80), and Dr. Bayne found that the claimant was in "obvious distress." (Tr. 138). The ALJ should have discussed this probative evidence. *See, e. g.*, *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is significantly probative.") [quotation omitted]. *See also Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

Finally, the ALJ indicated that instead of relying on the treating physician's opinion (or for that matter, the opinion of the consulting physician Dr. Bayne), he agreed with the state agency psychologist who found that the claimant had a mild degree of limitation in

activities of daily living and in maintaining social functioning and moderate limitations in maintaining concentration, persistence or pace and no repeated episodes of decompensation (Tr. 25, 348-61). However, the ALJ failed to explain why he found opinions from a non-examining agency psychologist preferable to those from the claimant's treating physician. *See Robinson*, 366 F.3d at 1084 ("The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Thus, the ALJ erred in rejecting the treating-physician opinion of Dr. Baca in favor of the non-examining, consulting-physician opinion of Dr. Walker absent a legally sufficient explanation for doing so."), *citing* 20 C.F.R. § 404.1527(d)(1),(2); Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *2.

Accordingly, the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis of Dr. Maxwell's opinions. On remand, the ALJ should reconsider Dr. Maxwell's opinions in accordance with the appropriate standards and determine what impact, if any, such reconsideration has on the claimant's ability to work.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case

REMANDED for further proceedings not inconsistent herewith. Parties are herewith given ten (10) days from the date of this service to file with the Court Clerk any objections with supporting brief. Failure to object to the Report and Recommendation within ten (10) days will preclude appellate review of the judgment of the District Court based on such findings.

**DATED** this 2nd day of November, 2007.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**